UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


THE ESTATE OF JAMAAL TAYLOR          CASE NO.: 1: 22-cv-02459-MJM
        Plaintiff,

-Vs-

BALTIMORE COUNTY MARYLAND, et.al.
        Defendant(s).
_____/


## PLAINTIFF'S FIRST AMENDED COMPLAINT WITH JURY DEMAND

**COMES NOW,** the Plaintiffs Marah O'Neal-Taylor , mother and next friend of minors C.T., Sa.T., T.T., Si.T.,  (hereinafter, collectively, referred to as "the Minor Plaintiffs") and the Estate of Jamaal Taylor, and Keith Taylor , by and through their attorney, Law Offices of James Sweeting III, for Wrongful Death and Demand for Jury by Trial wherein the Defendants Baltimore County Maryland, Officer Wise , in her personal and official capacity, Officer Brocato , in his personal and official capacity, who hereby file this their Amended Complaint and Demand for Jury Trial filed and in support of their stated causes of action Plaintiffs state further:

### NATURE OF THE CASE

1.  This is an action for monetary damages brought pursuant to 42 U.S.C. ¬ß¬ß 1988, the Fourth and Fourteenth Amendments of the United States

Constitution, the common law of the State of Maryland, and the Maryland Declaration of Rights against Baltimore County Maryland Police Officers Wise and Brocato, in their individual and official capacities.

## JURISDICTION, VENUE & PARTIES

2. This is an action for monetary damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments of the United States Constitution, the common law of the State of Maryland, and the Maryland Declaration of Rights against Baltimore County Police Officers Wise and Brocato , in their individual and official capacities.

3. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this court to entertain claims arising under Maryland State law. This action also includes wrongful death and survival claims pursuant to §§3-901 through 3-904 of the Courts and Judicial Proceedings Article of the Maryland Code Annotated and Maryland Rule 15-1001.

4. It is alleged that the individual defendants named herein made an unreasonable seizure of the person of Decedent Jamaal Taylor, thereby violating his rights under the Fourth and Fourteenth Amendment of United States Constitution, as well as, Articles 24 and 26 of Maryland Declaration of Rights. It is further alleged that the defendants named herein employed unwarranted and excessive force in effecting the seizure described herein.

5. That Marah O'Neal-Taylor is, and Jamaal Taylor was, biological parents of Minor Plaintiffs N.M. and K.M. Ms. Marah O'Neal-Taylor and her minor children are citizens of the State of Maryland with a primary residence in Baltimore City. That Marah O'Neal Taylor is, and Jamaal Taylor was, biological parents of Minor Plaintiff XX. Ms. Marah O'Neal-Taylor and her minor children are citizens of the State of Maryland with a primary residence in Baltimore City. The Minor Plaintiffs' father, Jamaal Taylor, deceased, had no other surviving issue. The Minor Plaintiffs are primary beneficiaries in this action pursuant to §3-904(a) of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland.

6. That Jamaal Taylor is also survived by his Father, Keith Taylor, who is also a statutory beneficiary in this action pursuant to §3-904(a) of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland.

7. That, at all times relevant to this complaint, Defendant Officer Wise was a duly authorized agent, servant, and/or employee of the Baltimore County Police Department. At all times relevant to this Complaint, Defendant Wilkes was acting within the scope and course of her employment as a member of the Baltimore County Police Department. She is sued in her individual and official capacities.

8. That Defendant Officer Brocato was a duly authorized agent, servant, and/or employee of the Baltimore County Police Department. At all times relevant to this Complaint, Defendant Wilkes was acting within the scope and course of his employment as a member of the Baltimore County Police Department. He is sued in his individual and official capacities.

9. That all incidents leading to the wrongful death of the Decedent and resulting in compensable injury occurred in Baltimore County, Maryland at the intersection of Shawan and Mccormick road right outside of the Hunt Valley Beer and wine located at 116 Shawan Road, Hunt Valley Maryland 21030. ("Shawan Location")

## ADMINISTRATIVE PREREQUISITES

10. That the Plaintiffs reallege and incorporate herein by reference all of the allegations contained in the preceding paragraphs.

11. That a Notice of Claim was submitted to the Office of Law for Baltimore County.

12. That the Office of Law for Baltimore County acknowledged receipt of the Notice of Claim form.

13. That the Office of Law for Baltimore County has either denied liability or One Hundred Eighty (180) days have elapsed since the submission of the Notice of Claim.

## FACTS CENTRAL TO PLAINTIFFS' CLAIMS

14. That on September 29, 2019, Officers Wise and Brocato responded to the Shawan Location as a result of multiple 911 emergency calls.

15. That, prior to and at the time of the incident at issue in this action, Officers Wise and Brocato , as well as, their local precinct, were familiar with Decedent Jamaal Taylor.

16. That specifically, Officers Wise and Brocato had knowledge of the fact that Decedent Jamaal Taylor, was suffering from mental illnesses and/or was an emotionally disturbed person. That on the day of the subject incident, before the Defendant officers made contact with the Deceased Taylor Defendants were aware that the deceased Taylor was having a mental episode.

17. Moreover, several of the 911 emergency calls that prompted the Officers' response indicated that Mr. Taylor suffered from mental illness.

18. On September 28, 2019,Defendants Wise and Brocato responded to 911 calls along with other Baltimore County Maryland Police Officers. When the responding officers arrived at the location they immediately saw the suspect.

19. The Baltimore County 911 dispatcher did not, however, alert the Baltimore County Maryland Crisis Response Unit about the situation at the Shawan Location , nor did he or she undertake any effort to direct members of the Baltimore County Maryland Crisis Response Unit and/or other officers with crisis intervention training to respond to the call for service.

20. During this time frame the Defendant Officers were in contact with the Decedent Taylor the Defendant's mental condition and irrationality were immediately apparent. The Decedent Taylor continued to exhibit and display signs of mental distress as he walked in the street away from the Officers.

21. The Decedent Taylor's conduct in walking slowly away from the Officers allowed the congregating Defendant officers ample time to attempt communication with the Decedent Jamaal Taylor; to undertake efforts to establish rapport with Decedent Jamaal Taylor and/or de-escalate the situation; to determine if Decedent Jamaal Taylor was armed and/or posed a threat of physical injury to any of the individuals present within the radius of the area in which he was shot; to summon the Baltimore County Mobile

Response Unit; and/or to request that officers with crisis intervention training respond to the scene. No such efforts were undertaken.

22. Defendants Wise and Brocato unholstered and drew their respective firearms immediately upon making contact with Decedent Jamaal Taylor or any other person at the location of the shooting.

23. Officers Wise and Brocato drew their weapons notwithstanding the fact that they were equipped with less than lethal means of force to subdue the Decedent Taylor, including OC pepper spray and tasers.

24. Upon arriving at the location, Defendant officers were oriented toward Decedent Jamaal Taylor, who was then standing in the middle of the street walking away from the Officers.

25. Decedent Jamaal Taylor, who was believed to be in possession of a knife, was sufficiently far away from the Defendant officers that he did not pose any threat to their safety and could not reasonably be perceived to pose any threat to their safety.

26. Decedent Jamaal Taylor was not in a position to do any physical harm to any other persons who were present at the Location while the officers were present.

27. Decedent Jamaal Taylor had not made any threatening gesture or verbal utterances directed at the Defendant officers, and never had occasion to have any verbal interaction or communication with the officers.

28. Immediately upon arriving at the Location, Defendants Wise and Brocato opened fire on Decedent Jamaal Taylor. The combination of the Defendant officers discharged multiple rounds during this initial volley of shots.

29. Defendants Wise and Brocato initiated the shooting was when Decedent Jamaal Taylor posed no immediate threat to Defendants Wise and Brocato or any other individuals, and reasonable officers under the same circumstances would not have responded with deadly force.

30. Rather than attempting any communication with Decedent Taylor, utilizing verbal commands and/or undertaking efforts to de-escalate the encounter with a known emotionally disturbed person, Defendants Wise and Brocato aggressively escalated the situation by immediately pointing their weapons toward Decedent Jamaal Taylor and ultimately shooting him without justification and/or legal authority.

31. Decedent Jamaal Taylor was struck by one or more of the projectiles and fell to the ground immediately.

32. As a direct result of the assault perpetrated by the Defendant Officers Wise and Brocato , Decedent Taylor suffered serious, painful, and fatal injuries.

33. In addition to the physical injuries described herein, Decedent Taylor suffered the following injuries and damages:

34. Violation of his well-established constitutional rights under the Fourth and Fourteenth Amendment of the United States Constitution to be free from an unreasonable search and seizure of his person;

35. Violation of his clearly established and well settled state constitutional rights under the Maryland Declaration of Rights Articles 24 and 26 including, but not limited to: Freedom from the unreasonable seizure of his person; and Freedom from the use of excessive, unreasonable and unjustified force against his person;

36. Loss of his physical liberty;

37. Conscious physical pain and suffering.

38. Emotional trauma and suffering, embarrassment, and mental anguish; and

39. Loss of future earning potential.

40. The actions of Defendant Officers Wise and Brocato violated the following clearly established and well settled federal and state constitutional rights of Decedent Taylor including his right to:

    a. Freedom from the unreasonable seizure of his person;

    b. Freedom from the use of excessive, unreasonable, and unjustified force against his person.

41. Decedent Jamaal Taylor in no way consented to the described use of force by Defendant Officers Wise and Brocato; in no way provoked, contributed to, or in any way presented just or reasonable cause for Officers Wise and Brocato to act as they did; and did nothing to contribute to the unlawful and unjustified use of force carried out by Officers Wise and Brocato.

42. The conduct of Defendant Officers Wise and Brocato was without legal justification or a proper purpose.

43. Defendant Officers Wise and Brocato's actions were also contrary to Baltimore County Maryland Police Department protocol in that they made no effort to communicate with and/or develop any rapport with Decedent Jamaal Taylor, offer aid, assess Decedent Taylor's mental status, or contact dispatch for crisis intervention assistance.

44. Rather than attempting any effort toward a non-violent resolution and/or de-escalate the encounter, Defendant Officers Wise and Brocato unholstered their weapons upon making contact with Decedent Taylor immediately upon arrival at the Location, immediately trained their weapons on Decedent Taylor and began shooting before attempting any communication with Decedent Taylor.

45. The conduct that led to Decedent Jamaal Taylor's untimely passing was the result of a dangerous pattern of practice within the Baltimore County

Maryland Police Department of using excessively deadly force when confronted with individuals with mental health disabilities and those experiencing mental health crises.

46. Shootings by Baltimore County Maryland Police officers have persisted notwithstanding the availability of crisis intervention training and Baltimore County Maryland Police Department general orders instructing officers on how to respond to individuals suffering from mental health disabilities or experiencing mental health and emotional crises.

47. Baltimore County Maryland Police Department General Order 1-3.18, "Mental Health/Emotional Crisis Related Issues," describes the steps that officers are required to take when encountering people experiencing mental health or emotional crisis-related issues.

48. Pursuant to the order, Baltimore County Maryland police officers have a duty to: (1) "offer aid," including requesting that the Mobile Crisis team respond; and (2) "seek immediate medical attention." The Order provides a list of signs and symptoms of mental health-relates issue or emotional crisis, including "irrational thoughts and/or actions, including suicidal ideations and attempts" and "depression."

49. When encountering individuals exhibiting signs of mental illness, General Order 1-318.1 directs officers to "de-escalate situations through verbal and

active listening skills" and to request crisis intervention assistance. Officers requiring assistance may (1) request the help of another officer who has received crisis intervention training, if the officer is not certified in such training; (2) request that the Mobil Crisis Team respond, "if the subject is believed to be experiencing mental related issues;" and/or (3) request that the Critical Incident Support Team respond, if the person is experiencing an emotional crisis due to a traumatic event.

50. The Baltimore County Maryland Police Department also provides crises intervention training to select officers. The training instructs officers on how to identify signs of mental illness and substance abuse disorders and assist individuals who are experiencing mental health issues or emotional crises.

51. The Baltimore County Maryland Police Departments enactment of these policies and provisions of training to some officers demonstrates that the Baltimore County Maryland Police Department knew and understood the necessity of training in order for its officers to safely and successfully respond to encounters with people in crises.

52. Despite notice of the necessity of such training, the Baltimore County Maryland Police Department has decided against training the majority of its officers on these policies.

53. Upon information and belief, neither Defendant Officers Wise and Brocato received any training on the handling of emotionally disturbed person and/or the manner of response to calls for service involving emotionally disturbed persons.

54. Baltimore County Maryland Police Department's actions in not training Defendant Officers Wise and Brocato proximately caused the fatal shooting of Decedent Jamaal Taylor.

55. The Baltimore County Police Maryland Department and Baltimore County Maryland further lack any policy or training requiring dispatchers at the 911 Communications Center to direct service calls involving subjects experiencing mental health crises to officers trained in crises assistance, or to otherwise notify and/or request the assistance of the Mobile Crises Team or Critical Incident Support Team. Operator at the 911 Communication Center are generally the first to receive information from callers regarding the nature, threat, and severity of any emergency, and therefore are a critical link in the chain of emergency responses. The Baltimore County Maryland Police Department and Baltimore County Maryland's failure to implement such a policy or training contributes to the unjustified, unreasonable and excessive force against people experiencing mental health or emotional crises.

56. Baltimore County Maryland Police Department officers have historically and routinely utilized excessive and deadly force encountering individuals experiencing mental health and emotional crises.

57. Some of the examples of deadly force utilized by Baltimore County Police department officers against people suffering from emotional crises, both predating and postdating the subject occurrence in his case, are as follows:

    a.   Odatei Mills - May 14, 2009 police involved shooting

          i.  Odatei Mills suffered from bipolar disorder. Mr. Mills and his family had requested the assistance of Baltimore County Police on several occasions, at the family homes located at 3611 Forest Gove Avenue in Baltimore County, Maryland, when he was suffering from manic episodes.

        ii.  May 14, 2009, Mr. Mills contacted 911 and reported that he needed assistance because he was beginning a manic episode. When Baltimore County Maryland patrol officers responded to the scene, Mr. Mills came out from his house, laid on the ground and started making unintelligible comments about aliens. Mr. Mills' mother soon arrived at the scene of the home and advised the Baltimore County Maryland police officers who were present at the scene that her son was bipolar, that he

14

was exhibiting the signs of a manic episode and that he needed help. The Baltimore County police officers accordingly knew, or reasonably should have known, that they were confronted with an emotionally disturbed person. They did not, however, undertake any efforts to de-escalate the situation.

iii. Believing the responding officers were aliens, Mr. Mills began retreating into his home. He was initially stopped when officers struck him with what they deemed to be a "blockbuster" taser hit. Mr. Mills' mother again advised the responding officers that her son was mentally ill. During the continuing encounter, Mr. Mills managed to make his way back into his home and the Crisis Response Team was contacted.

iv. Before the Crisis Response Unit or any individuals trained in crisis response arrived at the scene, however, the Baltimore County police officers who were present at the scene made entry into the Mill residence. Mr. Mills was not armed nor was he actively threatening the responding officers or any other parties in the vicinity. Nevertheless, one of the officers fired his service weapon and struck Mr. Mills with several rounds. Mr. Mills was caused to go to the ground as a result of the initial

volley of shots. After a pause of 20-30 seconds, while Mr. Mills was still lying face down on the ground and posing no threat whatsoever, the responding Baltimore County Maryland police officers recommenced the shooting. One of the officers performed a "hot re-load" where he ejected his clip and replaced it so that he could continue firing. Ultimately, two Baltimore County Maryland Police officers fired a total of 14 shots at Mr. Mills.

  v. Mr. Mills did not die but suffered severe injuries and an amputation as a result of the police shooting. The episode gave rise to the matter styled Odatei Mills v. Baltimore County Marylan, et al., United States District Court for the District of Maryland Case No. 1:12-CV-01362-CCB. During the course of the litigation, Mr.

  vi. Mills introduced expert testimony demonstrating that the manner in which Baltimore County Maryland Police Department officers responded to emotionally disturbed individuals was improper and that the Baltimore County Maryland Police Department's training was inadequate.

b. Korryn Gaines - August 1, 2016 police involved shooting death

i.  On August 1, 2016, Baltimore County Maryland Police officers fatally shot Korryn Gaines in her apartment following a six-hour standoff. Before the shooting Ms. Gaines was exhibiting obvious symptoms of mental illness. The Baltimore County Police officers who fatally shot her never requested the Mobile Crisis Unit or requested the assistance of a crisis intervention team.

ii. The happening gave rise to litigation in the Baltimore County Circuit Court. In the litigation, Ms. Gaines's family alleged the responding Baltimore County police officers shot Gaines due to a loss of patience and personal frustration with Gaines, not out of fear for life or safety. Testimonies at the trial made a possible link between Gaines' "impulsive behaviors and anger" and lead poisoning that had caused a loss of IQ points, neurological impairments, trouble concentrating, and behavioral issues.

c.  Emanuel Oates - February 19, 2019 police involved shooting

i. On February 19, 2019. Baltimore County Police Department received a call about a suspected shoplifting from a dollar store. Mr. Oates was identified as the perpetrator of the crime though it was later determined that he had possession of a receipt for the items purchased at the dollar store. Mr Oates, who was exhibiting signs of obvious emotional or mental distress , fled from the responding officers. Mr Oates was later corralled at a grocery store by the four responding Baltimore County police officers. In the final moments of the encounter, he was quoting the bible and walking slowly toward the officers. The four officers on scene did not call for the Mobile Crisis Team. Moreover, rather than retreating, utilizing non-lethal force, attempting to establish any kind of rapport, or otherwise defusing the situation they had created when they chased Mr. Oates into grocery store, the responding officers fired upon Mr. Oates. When the shooting was commenced, Mr. Oates had not been threatening the officers or any third party at the grocery store. Mr. Oates died from his wounds the following day.

d. Scott Robertson - June 22, 2019 police involved shooting

i. On June 22, 2019, the Baltimore County Police Department received a call for service concerning Scott Robertson. Angelica Ullsperger had called the police hoping they would be able to help calm him. She reported that Mr. Robertson was inside of a house and armed with a gun. Upon arrival Baltimore County Police officers determined that Mr. Robertson suffered from depression, had been drinking and was alone in the basement of the home. Ms. Ullsperger advised the responding Baltimore County police officers that Mr. Robertson suffered from PTSD and would likely become agitated if they approached the house. The responding officers did not wait for the Mobile Crisis Unit or officers who had received training concerning handling of situations involving emotionally disturbed individuals to arrive on the scene. Instead, they ordered Mr. Robertson out of the home and shot him four times when he attempted to comply. Mr. Robertson subsequently returned into his home. Because the responding police officers did not want to make entry into the premises, he bleed to death.

e. Eric Sopp - November 26, 2019 police involved shooting

i. On November 26, 2019, Catherine Sopp called the Baltimore County Police Department to help her son, Eric Sopp, who was suffering from a depressive episode. Mrs. Sopp advised Baltimore County dispatch that her son was suicidal and was driving a Red Toyota Camry. The dispatcher issued a call for a suicidal subject but did not send the Mobile Crises Team or otherwise request the assistance of trained crisis intervention personnel.

ii. A Baltimore County police officer later spotted Mr. Sopp's vehicle, initiated pursuit and effected a traffic stop. The responding officer made no attempt to develop a rapport with Mr. Sopp, offer aid, assess Mr. Sopp's mental status, or contact the dispatcher for crises intervention assistance. Rather than acting to de-escalate the situation, the responding officer kept his service weapon trained at Mr. Sopp. Mr. Sopp advised the responding officer that he was getting out of his vehicle. Approximately one minute later, the responding police officer shot Mr. Sopp eight times. The shooting was fatal.

58. It is the knowledge and belief of Plaintiffs and therefore averred as fact that there have been other occasions in which members of the Baltimore County

Maryland police Department have unreasonably directed deadly force at emotionally disturbed persons.

59. Defendant Officers Wise and Brocato actions, as alleged in this pleading, were performed pursuant to the de facto custom and policy within the Baltimore County Maryland Police Department of unreasonably directing excessive force against emotionally disturbed persons.

60. The conduct that resulted in Decedent Taylor death was the result of a historical and dangerous practice within the Baltimore County Maryland Police Department of quickly directing lethal force at emotionally disturbed individuals and/or utilizing excessive deadly force against individuals with mental health disabilities and those experiencing mental health crises, depriving said individuals including the Decedent, Taylor of his right not to be subject to an unreasonable seizure of his, thereby violating his rights under the Fourth and Fourteenth Amendment of United States Constitution, as well as, Articles 24 and 26 of Maryland Declaration of Rights. It is further alleged that the defendants named herein employed unwarranted and excessive force in effecting the seizure described herein.

61. The circumstances in the instant case are consistent with the pattern of response by the Baltimore County Maryland Police Department that has persisted since at least 2006. The pattern has continued unabated because the

Baltimore County Maryland Department has failed to properly supervise or discipline its officers when they utilize excessive force against people in mental or emotional distress.

62. It is the knowledge and belief of the Plaintiffs, and therefore averred as fact, that none of the Defendant officers in this case, nor the Baltimore County Maryland police officers involved in the encounters with Odatei Mills, Korryn Gaines, Emanuel Oates, Scott Robertson or Eric Sopp were disciplined in connection with the described happenings. In each case the Baltimore County Police Department conducted perfunctory investigations intended to quickly clear the shooting officers of any wrongdoing and then returned the officers to duty without further action.

63. Further in the current circumstances the Defendant Officers, received a commendation for their actions, further fostering and encouraging an atmosphere within the Baltimore County Maryland Police Department hostile to the rights of citizens to be free of unreasonable seizure, thereby violating citizens rights under the Fourth and Fourteenth Amendment of United States Constitution, as well as, Articles 24 and 26 of Maryland Declaration of Rights.

64. The Baltimore County Maryland Police Department's historical and ongoing failure to discipline or otherwise take supervisory action in response to its

officers' unjustified use of force against emotionally disturbed persons and/or individuals exhibiting signs of mental and emotional distress has served as a communication to its officers that it condones such actions and has made such conduct substantially more likely to be repeated.

65. The decisions not to train, supervises or discipline Baltimore County Maryland Police Department officers, as described herein, was consciously approved by the department's policy makers. The failures demonstrate, and were the result of, deliberate indifference to officers' violations of citizens' rights to be free from excessive force.

66. The Baltimore County Maryland's Police Department's decision against properly training its officers proximately caused Jamaal Taylor's death.

67. Despite actual or constructive knowledge that its officers customarily used unreasonable and deadly force in encounters with people with mental illness and/or in crisis, the Baltimore County Police Department did not act to remedy these abuses. It thereby perpetuated the unlawful practices that proximately resulted in the death of Jamaal Taylor.

### COUNT I— DEPRIVATION OF RIGHTS UNDER 42 U.S.C.A. § 1983 – FOURTH AND FOURTEENTH AMENDMENT
(Estate of Jamaal Taylor v. Defendants Wise and  Brocato)

68. Plaintiffs reallege and incorporate paragraphs 1-60 herein by reference.

69. At all times relevant to this Complaint, Decedent Jamaal Taylor had rights afforded to him by the Fourth and Fourteenth Amendments to the United States Constitution not to have his person or property unlawfully searched, seized, or detained in an unreasonable manner; not to be deprived of his liberty without due process of the law; not to be subjected to excessive force during the course of an arrest; not to be unreasonably denied necessary medical treatment; and not to be summarily punished.

70. At all times relevant herein, Defendant Officers Wise and Brocato were acting under the color of State and local law and as members of the Baltimore County Maryland Police Department. Their conduct therefore triggers 42 U.S.C. §1983.

71. Defendant Officers Wise and Brocato actions and omissions deprived Decedent Taylor of his clearly established and well-settled constitutional rights.

72. Defendant Officers Wise and Brocato knowingly acted to deprive the Plaintiff of his constitutional rights.

73. The actions of Defendants Wise and Brocato deprived Jamaal Taylor of rights and privileges secured and protected by the United States Constitution, specifically the Fourth Amendment right to be free from excessive use of force against a plaintiffs person during the course of an

arrest, freedom from unreasonable searches and seizures, freedom from a deprivation of life and liberty without due process of law, and freedom from summary punishment.

74. Considering the totality of the circumstances, Defendants Wise and Brocato 's conduct, in among other things initiating the first volley of shots, was unjustified and unreasonable. Defendants Wise and Brocato knew and understood thar Decedent Jamaal Taylor was an emotionally disturbed person, but made no effort to communicate with him, build rapport and/or deescalate the situation before commencing the use of deadly force. These defendant officers likewise did not issue any verbal commands, attempt to employ less than lethal force alternatives, or undertake any effort to determine if Decedent Jamaal Taylor posed some risk to their safety, before they commenced the shooting. Reasonable police officers in the same situation would not have concluded that the Decedent Jamaal Taylor was unarmed and posed an immediate threat justifying the use of deadly force or that deadly force was necessary in light of the ongoing circumstances at the Shawan Location .

75. Considering the totality of the circumstances, Defendant Wilkes' conduct, in among other things shooting Decedent Jamaal Taylor after the initially volley of shots had been discontinued and while he was visibly injured,

lying prostrate on the ground, unarmed and physically incapable of threatening the defendant police officers or any third persons at the scene, was also unjustified and unreasonable. Reasonable police officers in the same situation would not have concluded that the Decedent Jamaal Taylor posed an immediate threat justifying the use of deadly force or that deadly force was necessary in light of the ongoing circumstances at the Shawan Location .

76. Defendants Wise and Brocato  knowingly acted to deprive Decedent Jamaal Taylor of his Constitutional Rights maliciously and with reckless disregard. Defendants Wise and Brocato  further conspired with each other to act in an unlawful manner that would violate Decedent Jamaal Taylor's Constitutional Rights.

77. The Estate of Jamaal Taylor and statutory beneficiaries to the same claim damages for the injuries set forth above under 42 U.S.C. § 1983 against Defendant Officers Wise and Brocato for violation of Decedent Taylor's constitutional rights under color of law.


COUNT II — DEPRIVATION OF RIGHTS UNDER ARTICLES 24 AND 26 OF THE MARYLAND DECLARATION OF RIGHTS
(Estate of Jamaal Taylor v. Defendants Wise and  Brocato)

78. That the Plaintiffs reallege and incorporate herein by reference all of the allegations contained in paragraphs 1 through 77.

79. As a direct and proximate result of the actions and omissions of Defendant Wise and Brocato, described herein, all of which were committed under the color of their authority as members of the Baltimore County Maryland Police Department and while acting in the capacity of duly authorized police officer, Decedent Taylor was further deprived of certain "State Rights" established by way of Article 24 and 26 of the Maryland Declaration of Rights.

80. As a result of the above-described acts attributed to Defendants Wise and Brocato, Decedent Jamaal Taylor was deprived of rights and immunities secured to him under the in particular, his right not to be subjected excessive force during the course of an ongoing arrest and his right not be deprived of his liberty. That for the reasons discussed above, the Defendants have also violated the protections, privileges, and rights granted to Jamaal Taylor under the laws of the State of Maryland.

81. As a direct consequence in result of the actions and omissions of Defendants Wise and Brocato described herein, Decedent Jamaal Taylor was caused to suffer severe physical injuries, emotional and physical suffering and an untimely death.

<u>COUNT III — DEPRIVATION OF RIGHTS UNDER 42 U.S.C.A. 1983</u>
<u>FOR INADEQUATE SUPERVISION AND DISCIPLINE</u>
(Monell Claim by the Estate of Jamaal Taylor v. Baltimore County )

82. That the Plaintiffs reallege and incorporate herein by reference all of the allegations contained in paragraphs 1-81 as if restated herein.

83. That at the time of the fatal shooting underlying this case, the Baltimore County Maryland Police Department had developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of citizens in Baltimore County suffering from mental illness, which caused the violation of Decedent Jamaal Taylor's rights.

84. At all times relevant to this Complaint, Defendant Baltimore County Maryland, through Baltimore County Maryland's police administration, supervisory personnel, and other police officers knew and understood that it had inadequate policies and procedures in place for calls involving individuals suffering from mental illness and/or emotionally disturbed individuals.

85. That prior to the time of the incident at issue in this suit, Defendant Baltimore County Maryland's failure to the appropriately train, supervise, and monitor officers who had occasion to respond to calls for service

involving individuals suffering from mental illness and/or emotionally disturbed individuals had resulted in police involved shootings.

86. As a result, the Baltimore County Maryland's Police Department had actual or constructive notice of a need to more thoroughly train its officers; utilize the Crisis Response Unit in all calls with involving individuals known to suffer from mental illness and/or to emotionally disturbed individuals; and to more thoroughly supervise officers who might be caused to encounter individuals known to suffer from mental illness and/or to emotionally disturbed individuals.

87. That it was the policy and/or custom of Baltimore County Maryland's Police Department to fail to exercise reasonable care in hiring its police officers, thereby failing to adequately prevent constitutional violations on the part of its police officers.

88. That it was the policy and/or custom of the Baltimore County Maryland's Police Department to inadequately supervise and train its police officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers.

89. That as a result of the above-described policies and customs, police officers of Baltimore County Maryland believed that their actions would not be properly monitored by supervisory officers and that misconduct would not

be investigated or sanctioned but would be tolerated, if not actively encouraged.

90. That the actions of Defendants Wise and Brocato were undertaken pursuant to a customs or usages within the Baltimore County Maryland's Police Department of quickly directing excessive and deadly force at emotionally disturbed persons and or persons suffering from mental illness and mental or emotional crises; and also of failing to utilize the Mobile Response Unit and/or call upon and/or utilize officers who were trained for encounters involving emotionally disturbed persons.

91. That the above described policies and customs demonstrate a deliberate indifference on the part of Baltimore County Maryland to the constitutional rights of persons within the Baltimore County, and were the cause of the violations of Plaintiffs rights alleged herein.

## COUNT IV— WRONGFUL DEATH
(Marah O'Neal-Taylor , Mother and Next Friend of minor plaintiffs C.T.., Sa.T.., T.T. and S.T.?. and Keith Taylor  v. All Defendants)

92. That the Plaintiffs reallege and incorporate all preceding paragraphs as if restated fully herein.

93. That the death of Jamaal Taylor was caused by the negligent use of excessive and/or lethal force.

94. That §§3-904 of the Courts and Judicial Proceedings Article of the Maryland Code Annotated defines the terms for a wrongful death action.

95. That according to said section, an action under this subtitle shall be for the benefit of the wife, husband, parent, and child of the deceased person.

That according to subsection (e) of the aforementioned section, for the death of a child, who is not described under subsection (d) of this section, or a parent of a child, who is not a minor child, the damages awarded under subsection (c) of this section are not limited or restricted by the "pecuniary loss" or "pecuniary benefit" rule but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, care, attention, advice, counsel, training, education, or guidance where applicable.

96. Defendant Wise and Brocato deviated from acceptable standards and acted unreasonably during in the time leading up to and then during the shooting incident described herein.

Defendant Baltimore County Maryland likewise deviated from acceptable standards and acted unreasonably.

97. At all times relevant to this Complaint, Defendant Baltimore County Maryland had inadequate training, supervision and policies and procedures in place concerning police encounters with citizens suffering from mental

illness and/or emotionally disturbed individuals. By way of prior dealing between members of the Baltimore County Maryland Police Department and citizens suffering from mental illness and/or emotionally disturbed individuals, Defendant Baltimore Maryland County had actual and/or constructive knowledge that the inadequacies in its training program, supervision and policies gave rise to an unreasonable risk of injury to citizens including Decedent Jamaal Taylor.

98. Defendant Baltimore Count Maryland is also vicariously liable for the acts and omissions of its actual and apparent agents, servants, and/or employees including Defendants Wise and Brocato .

99. Defendants Baltimore County Maryland, Wise and Brocato were negligent, in among other things, failing to act as reasonably competent law enforcement personnel would have acted under the same or similar circumstances; failing to adequately train, supervise, and instruct their agents, servants, and employees; failing to have in pace proper policies and procedures regarding and/or concerning the operation of the Baltimore County Maryland Crisis Response Team;

   a. failing to have in place proper policies and procedures concerning interactions with citizens with known mental health illnesses and/or citizens suffering from emotional disturbances;

b. failing to the identify Decedent Taylor as an individual in need of psychiatric treatment and attention;

c. failing to recognize that Decedent Taylor was unarmed and that he did not otherwise pose a threat to law enforcement personnel on the scene;

d. failing to respond appropriately to the circumstances existing at thetime; and in employing lethal force against a subdued, injured, and nonthreatening citizen.

100. Defendants also committed other acts of negligence which are not expressly enumerated herein.

101. Decedent Jamaal Taylor was not contributorily negligent and did not assume the risk of any injury.

102. That as a direct and proximate result of the negligent conduct of Defendants Baltimore County Maryland, Wise and Brocato, Plaintiff Keith Taylor, as the biological Father of Decedent Jamaal Taylor's children, suffered and sustained pecuniary loss; mental anguish; emotional pain and suffering; loss of monetary earnings, contributions and support; loss of services; loss of comfort; loss of solace; loss of society; loss of companionship; loss of protection; loss of filial care; loss of attention; loss

of advice; loss of counsel; and loss of guidance and are entitled to recover such damages as a consequence of the Decedent's tragic and untimely death.

103.     That Minor Plaintiffs are entitled to recover damages for their father's tragic and untimely death. As a direct and proximate result of the negligent conduct of Defendants Baltimore County Maryland, Wise and Brocato, Minor Plaintiffs, as the children of the deceased, suffered and sustained pecuniary loss; mental anguish; emotional pain and suffering; loss of monetary earnings, contributions, and support; loss of services; loss of comfort; loss of solace; loss of society; loss of companionship; loss of protection; loss of filial care; loss of attention; loss of advice; loss of counsel; and loss of guidance and is entitled to recover such damages as a consequence of his father's tragic and untimely death.

## COUNT V— SURVIVAL ACTION
(Estate of Jamaal Taylor and Keith Taylor  v. All Defendants)

That the Plaintiffs reallege and incorporate by reference all preceding paragraphs as if restated fully herein.

104.     Pursuant to MARYLAND ANNOTATED CODE, Estates and Trusts Article § 7-401(y), Plaintiff Marah O'Neal Taylor is authorized to bring a survival action as the Personal Representative of the Estate of Jamaal Taylor. As stated above, Defendants Wise and Brocato deviated from

acceptable standards and acted unreasonably during the time leading up to and then during the incident described herein.

105.    Defendant Baltimore County Maryland likewise deviated from acceptable standards and acted unreasonably. At all times relevant to this Complaint, Defendant Baltimore County had inadequate training, supervision and policies and procedures in place concerning police encounters with citizens suffering from mental illness and/or emotionally disturbed individuals. By way of prior dealing between members of the Baltimore County Maryland Police Department and citizens suffering from mental illness and/or emotionally disturbed individuals, Defendant Baltimore County had actual and/or constructive knowledge that the inadequacies in its training program, supervision and policies gave rise to an unreasonable risk of injury to citizens including Decedent Jamaal Taylor. Defendant Baltimore County Maryland is also vicariously liable for the acts and omissions of its actual and apparent agents, servants, and/or employees including Defendants Wise and Brocato.

106.    Defendants Baltimore County, Wise and Brocato were negligent, in among other things, failing to act as reasonably competent law enforcement personnel would have acted under the same or similar circumstances; failing to adequately train, supervise, and instruct their agents, servants, and

employees; failing to have in pace proper policies and procedures regarding and/or concerning the operation of the Baltimore County Crisis Response Team; failing to have in place proper policies and procedures concerning interactions with citizens with known mental health illnesses and/or citizens suffering from emotional disturbances; failing to the identify Decedent Taylor as an individual in need of medical treatment and attention; failing to recognize that Decedent Taylor was unarmed and that he did not otherwise pose a threat to law enforcement personnel on the scene; failing to respond appropriately to the circumstances existing at the Shawan location, and utilizing force against a subdued, injured, and nonthreatening citizen.

107.    Defendants also committed other acts of negligence which are not expressly enumerated herein.

That as a direct and proximate result of the Defendants' actions against the Decedent, Decedent sustained extreme pain, suffering, and mental distress between the time of the incident and the time of his death.

**WHEREFORE**, Plaintiffs the Estate of Jamaal Taylor, Marah O'Neal-Taylor  as Mother and Next Friend of minor plaintiffs C.T., Sa.T., T.T. and S.T., and Keith Taylor  hereby request that this Honorable Court:

A. Award the Plaintiffs actual, compensatory, and consequential damages in an amount to be determined at trial against Defendants Wise , Brocato , Shannon Stargel, and Baltimore County, jointly and severally;

B. Award Plaintiffs punitive damages in an amount to be determined at trial against Defendants Wise and Brocato;

C. Award costs of this action to the Plaintiffs;

D. Award the Plaintiffs reasonable attorney's fees and costs incurred in pursuing this action, as provided under 42 U.S.C. §§ 1983 and 1988; and

E. Award such other and further relief as this Court may deem just and appropriate

F. Trial by Jury on all issues so triable.

G. Costs expended herein including reasonable attorney's fees.

H. Pre-judgement and post judgement interest.

7. Any and all other relief that this court deems equitable and just.

Respectfully submitted:

_____

JAMES SWEETING III, ESQUIRE
Bar Id No.: 20573
The Law Offices of James Sweeting III, LLC
2225 St. Paul Street
Baltimore Maryland 21218
(443) 267 7534

*James@sweetinglaw.com*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that on Dec 25 2022, a copy of the foregoing Response was mailed first class, postage pre-paid to: Bradley J. Neitzel, Esquire Assistant County Attorney, Baltimore County Office of Law, 400 Washington Avenue, Suite 219, Towson Maryland 21204.

*James Sweeting III, Esquire*