## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

THE ESTATE OF JAMAAL TAYLOR,    *
*et al.*,

    *Plaintiffs*,        *

   v.              *     Civil Action No. RDB-22-2459

BALTIMORE COUNTY, *et al.*,     *

    *Defendants*.        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

This case arises out of the police-involved shooting of Jamaal Taylor ("Taylor"), who was killed on September 28, 2019, by Baltimore County Police Department ("BCPD") officers responding to reports that Taylor had stabbed several people in Hunt Valley, Maryland.  On September 28, 2022, the last day of the three-year limitations period,[1] Taylor's Estate and surviving members of his family brought this action against Baltimore County and two officers involved in the shooting.  (ECF No. 1.)  Specifically, Plaintiffs The Estate of Jamaal Taylor ("Taylor's Estate"); Marah O'Neal-Taylor as Mother and Next Friend of Minor Children C.T., Sa.T.; T.T.; and Si.T., ("Minor Plaintiffs"), and Keith Taylor (collectively, "Plaintiffs") initiated this action by filing a five-count Complaint in this Court against Defendants BCPD Officers Wise ("Officer Wise") and Brocato ("Officer Brocato") (collectively, "Officer Defendants"),

---

[1] Claims arising under 42 U.S.C. § 1983 are subject to the statute of limitations for the most analogous state-law cause of action.  *Owens v. Baltimore City State's Atty's Off.*, 767 F.3d 379, 388 (4th Cir. 2014).  In Maryland, excessive force claims under § 1983 are subject to the state's three-year statute of limitations, which also applies to wrongful death, negligence, and survival actions.  *See, e.g., Georgia-Pacific Corp. v. Benjamin*, 909 A.2d 511, 519 (Md. 2009) (explaining three-years statute of limitations for wrongful death and survival actions); *Dunbar v. Biedlingmaier*, DKC-20-0738, 2022 WL 814293, at *2–*3 (D. Md. Mar. 17, 2022) (explaining statute of limitations for § 1983 claim).  Accordingly, all of Plaintiffs' claims are subject to a three-year statute of limitations.

and Baltimore County, Maryland, ("Baltimore County") (collectively, "Defendants").  (ECF No. 1.)  Following Defendants' Motion to Dismiss (ECF No. 13) and some procedural difficulties, Plaintiffs obtained leave to amend and filed the operative Amended Complaint (ECF No. 21) on May 25, 2023.  *See* (Letter Order, ECF No. 20.)

In the Amended Complaint, Taylor's Estate alleges Deprivation of Rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the U.S. Constitution against Officer Defendants (Count I); Deprivation of Rights under Articles 24 and 26 of the Maryland Declaration of Rights against Officer Defendants (Count II); and Deprivation of Rights under 42 U.S.C. § 1983 for Inadequate Supervision and Discipline as a *Monell* claim[2] against Baltimore County (Count III).  (ECF No. 21.)  Additionally, Minor Plaintiffs and Keith Taylor allege wrongful death against Defendants (Count IV), and Taylor's Estate and Keith Taylor allege a survival action against Defendants (Count V).  (*Id.*)  Following Baltimore County's Motion to Dismiss (ECF No. 22), this Court by Memorandum Order dated January 26, 2024, dismissed without prejudice Counts IV and V as alleged against Baltimore County.  (ECF No. 27 at 9.)

Currently pending before this Court is Officer Defendants' Motion for Summary Judgment ("Officer Defendants' Motion") as to the claims alleged against them in Counts I, II, IV, and V.  (ECF No. 42.)[3]  Plaintiffs have responded in Opposition (ECF Nos. 46, 46-1),

---

[2]  In *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978), the Supreme Court held that municipalities are persons who may be liable under 42 U.S.C. § 1983 where they inflict injuries pursuant to a "policy or custom."  *Monell*, 436 U.S. at 694, 98 S. Ct. 2018.

[3]  Also pending is Plaintiffs' Motion to Extend Time to File Opposition to Motion for Summary Judgment (ECF No. 44), to which Officer Defendants responded in Opposition (ECF No. 45).  Under Federal Rule of Civil Procedure 6(b)(1), a court may extend time to respond to a motion for good cause.  As this Court has explained, "such 'good cause' is 'established when the moving party shows that it cannot meet the deadlines in the scheduling order despite diligent efforts.'"  *Klicos Painting Co., Inc. v. Saffo Contractors, Inc.*, RDB-15-2505, 2018 WL 1786968, at *3 (D. Md. Apr. 13, 2018) (quoting *Everhart v. Wash. Metro. Area Transit Auth.*, DKC-11-2155, 2012 WL 6136732, at *2 (D. Md. Dec. 10, 2012)).  In this case, Plaintiffs timely sought an extension of time to respond based on outstanding discovery and counsel's active trial schedule.  Regardless of Plaintiffs' entitlement

and Officer Defendants have replied (ECF No. 47). The parties' submissions have been reviewed and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Officer Defendants' Motion shall be GRANTED. Specifically, Officer Defendants shall be granted summary judgment as to Counts I, II, IV, and V. Additionally, because the *Monell* claim against Baltimore County in Count III depends on the Officer Defendants' underlying acts, Count III must be DISMISSED WITH PREJUDICE.

## BACKGROUND

The claims in this case arise from an officer-involved shooting in which Baltimore County Police Department ("BCPD") officers shot and killed Jamaal Taylor ("Taylor"). (ECF No. 21 ¶¶ 9, 14.) On September 28, 2019,[4] Officer Defendants Wise and Brocato responded to the intersection of Shawan Road and McCormick Road in Hunt Valley, Maryland, after BCPD received multiple 911 emergency calls reporting that Taylor had stabbed individuals at several locations in Hunt Valley. (ECF No. 21 ¶¶ 9, 14; ECF No. 42 at 3.) In their Amended Complaint, Plaintiffs allege that both Officer Defendants and their local precinct were familiar with Taylor and knew that he suffered a mental illness or emotional disturbance. (ECF No. 21 ¶¶ 15–16.) Specifically, Plaintiffs allege that the Officer Defendants knew that Taylor was having a mental episode when they responded to Shawan Road on September 28, 2019,

---

to discovery before responding to a motion for summary judgment, Plaintiffs' counsel's busy trial schedule constitutes good cause to grant Plaintiffs' Motion (ECF No. 44). Accordingly, Plaintiffs' Motion to Extend Time to File Opposition to Motion for Summary Judgment (ECF No. 44) is GRANTED, and the Court considers Plaintiffs' Opposition in this Memorandum Opinion.

[4] Plaintiffs' Amended Complaint (ECF No. 21) provides both September 28, 2019, and September 29, 2019, as the date on which the shooting occurred. *See* (*id.* ¶¶ 14, 18.) Officer Defendants' Motion provides September 28, 2019, as the date of the shooting. This factual discrepancy is not material to the claims at issue, all of which relate to the Officer Defendants' substantive actions that day. For consistency, the Court adopts September 29, 2019, as the date of the shooting.

because several of the emergency callers indicated that Taylor suffered a mental illness.  (*Id.* ¶¶ 16, 17.)  Plaintiffs allege that the 911 dispatcher did not alert the Baltimore County Maryland Crisis Response Unit about the reports of a disturbance on Shawan Road and took no effort to direct officers with crisis intervention training to respond to the incident.  (*Id.* ¶ 19.)

Officer Brocato responded to Shawan Road "to assist patrol Officers who were responding to a call for service involving a subject with a box cutter at the Hunt Valley Liquor Store." (ECF No. 42 at 3; ECF No. 42-2 at 2.)  While Officer Brocato was driving to Shawan Road, a second 911 caller reported that "the subject had been fighting with an employee at the location and then left on foot toward the Light Rail station," and a third caller reported that someone had been stabbed at a restaurant.  (ECF No. 42 at 2; ECF No. 42-2 at 2.)  Officer Wise similarly responded to the scene based on reports of a "subject with a knife" and dispatch's alert to all units that "the subject had stabbed multiple people at the Hunt Valley Town Center located at 118 Shawan Road."  (ECF No. 42 at 2–3; ECF No. 42-3 at 2.)  Officer Defendants' body-worn cameras captured the events immediately preceding the shooting.[5]

Officer Brocato is a member of BCPD's Mobile Crisis Team and arrived at the scene in uniform in an unmarked white vehicle with his civilian partner as a passenger.  (ECF No. 42-2 at 3; ECF No. 42 Ex. C. at 00:30.)  Upon arriving at the scene, Officer Brocato exited his vehicle—leaving his civilian partner inside—and began to speak to Taylor, who was walking in Shawan Road toward the intersection with McCormick Road.  (ECF No. 42 Ex. C at 00:54.)  Several other officers were also out of their vehicles and following Taylor at a distance.  (*Id.*)

---

[5] Exhibit C to Officer Defendants' Motion (ECF No. 42) is video footage, including audio, from Officer Brocato's body-worn camera.  Exhibit D to Officer Defendants' Motion is video footage, including audio, from Officer Wise's body-worn camera.  References to these exhibits include approximate timestamps.

Although the officers had blocked part of the intersection and were directing traffic, civilian vehicles were still driving in the area when Officer Brocato arrived. (*Id.* at 00:30–1:00.) Officer Brocato ordered a civilian driver in the road to "turn around" before yelling "come on man, drop the knife!" at Taylor. (*Id.* at 1:00.) Taylor continued walking toward the intersection, where several civilian vehicles were stopped. (*Id.*) Officer Brocato remained in the road and shouted to Taylor, "Drop it man. Drop the knife. Come on buddy, drop the knife. Drop the knife. What's going on? What's going on today? Come on, man, talk to me." (*Id.* at 1:00–1:14.) Taylor did not acknowledge Officer Brocato and continued walking toward the intersection. (*Id.*)

Officer Brocato then drew his service weapon and pointed it at Taylor before again directing him to "drop the knife. Come on, man, drop the knife. Drop the knife. Drop it. Drop the knife. Come on, man … Drop it. Stop walking." (*Id.* at 1:17–1:36.) In the background of Officer Brocato's body-worn camera footage, another officer also shouted "drop the knife." (*Id.* at 1:36–1:40.) Taylor continued walking without responding to the officers, but he periodically lifted his arms and pointed in the officers' direction while walking toward the intersection. (*Id.* at 1:40–1:47.) As Taylor approached Officer Brocato's unmarked police vehicle, which was parked in the right lane of Shawan Road near the intersection, Officer Brocato again told Taylor, "Drop the knife, dude. Drop the knife. Drop the knife. Come on, man. Drop the knife. Watch, I got a civilian in the car." (*Id.* at 1:40–1:50.) Taylor continued walking past Officer Brocato's vehicle and into the turn lane that drivers use to merge onto Shawan Road after turning right off McCormick Road. (*Id.* at 1:50–1:55.) Officer Brocato repeatedly instructed Taylor to "Drop the knife. Drop it" while pointing his service

weapon at him. (*Id.* at 1:50–2:10.) As Taylor neared the cross-walk in the turn lane of the intersection, Officer Brocato stated "Uh we got people everywhere." (*Id.* at 2:07–2:10.) No civilian pedestrians were visible at this point in his body-worn camera footage, but at least six civilian cars were stopped at the light on McCormick Road, a few feet from Taylor. (*Id.* at 2:07.)

Officer Brocato raised his voice to yell "Drop the knife" again, and several other officers shouted, "Drop the knife." (*Id.*) Officer Brocato approached Taylor more closely as he continued walking toward the vehicles on McCormick Road, and a civilian vehicle in the background reversed away from Taylor just as Officer Brocato shot approximately seven times at Taylor. (*Id.* at 2:17–2:23.) Two civilian vehicle pulled forward to move out of the way and Taylor stumbled in front of two other vehicles on McCormick Road as Officer Brocato shouted, "get on the ground." (*Id.* at 2:20–2:23.) Officer Brocato fired his weapon again, and five gunshots were audible in his body-worn camera footage. (*Id.* 2:23–2:28.) Taylor fell to the ground on his back in McCormick Road, bleeding from his stomach and arms. (*Id.* at 2:28–2:33.) An officer said, "get that knife out of the way," and "call the medic. Get a medic" as Officer Brocato approached Taylor with his weapon still drawn. (*Id.* at 2:33–2:36).

Officer Wise's body-worn camera footage shows that he arrived on the scene in a marked vehicle, parked near the intersection on Shawan Road parallel to McCormick Road, and opened his trunk to retrieve his rifle from its case.[6] (ECF No. 42 Ex. D. at 1:25–1:35.) Because Officer Wise parked his police vehicle near the intersection, his body-worn camera

---

[6] Because Officer Brocato's unmarked vehicle is visible in Officer Wise's body-worn camera footage, it is clear that Officer Wise arrived after Officer Brocato. (ECF No. 42 Ex. D. at 1:27.)

footage captured multiple civilian cars driving on McCormick Road through the intersection and stopped in the right lane to turn from McCormick Road onto Shawan Road. (*Id.* at 1:17–1:20.) As Officer Wise retrieved his rifle, several officers stood in Shawan Road with their weapons trained on Taylor as he walked toward the intersection. (*Id.* at 1:27.) Officer Wise's body-worn camera footage captured his somewhat rushed movements as he attempted to open his rifle case and muttered "hurry the f*** up dude." (*Id.* at 1:43–1:45.)

About thirty seconds elapsed as Officer Wise retrieved the rifle, and, by the time he had it in his hands, Taylor had reached the right turn lane on Shawan Road, several feet from the civilian vehicles stopped on McCormick Road. (*Id.* at 1:27–2:01.) As Officer Wise loaded the rifle and pointed it at Taylor, other officers shouted "Drop the knife. Drop the knife." (*Id.* at 2:02–2:06.) Officer Wise then shouted "Drop the knife. Drop the knife" as Taylor came within a few feet of the vehicles on McCormick Road. (*Id.* at 2:06–2:11.) Officer Wise fired his weapon, and his body-worn camera captured the sound of several gunshots as officers shouted, "Drop the knife" and "Get on the ground." (*Id.* at 2:11–2:17.) An officer stated "shots fired, shots fired" as Officer Wise approached Taylor, who lay on the ground in the middle of McCormick Road. (*Id.* at 2:18–2:22) Officers stated "Get a medic. Get a medic." (*Id.* at 2:22–2:28.) Taylor's injuries were fatal. (ECF No. 42 at 4; ECF No. 21 ¶ 32.)

Plaintiffs dispute this version of the facts, alleging that the Officer Defendants did not "undertake efforts to establish rapport with Decedent Jamaal Taylor and/or de-escalate the situation; to determine if Decedent Jamaal Taylor was armed and/or posed a threat of physical injury to any of the individuals present … to summon the Baltimore County Maryland Mobile Response Unit; and/or to request that officers with crisis intervention training respond to the

scene." (ECF No. 21 ¶ 21; ECF No. 46-1 at 2–3; ECF No. 46 at 4.)  Plaintiffs contend that "Defendants Wise and Brocato unholstered and drew their respective firearms immediately upon making contact with Mr. Taylor." (ECF No. 46-1 at 3; ECF No. 21 ¶ 28.)  Moreover, Plaintiffs contend that Taylor was not walking in the direction of an officer's vehicle or approaching an officer, and they assert that he was not an immediate threat at the time of his demise. (ECF No. 46 at 4.)

Plaintiffs initiated the instant action on September 28, 2022, by filing a five-count Complaint alleging state and federal civil rights claims against Defendants. (ECF No. 1.)  On January 26, 2024, following Defendant Baltimore County's Motion (ECF No. 22), this Court dismissed without prejudice Counts IV and V as to Baltimore County. (ECF No. 27 at 2.)  On August 23, 2024, Officer Defendants filed a Motion for Summary Judgment. (ECF No. 42.)  Plaintiffs responded in Opposition (ECF No. 46), and Defendants have replied (ECF No. 47).  This matter is now ripe for review.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a

court's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation ... to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Judd*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650, 656–59 (2014).

To survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). That is, the nonmoving party bears the burden to submit evidence that is "significantly probative" as to a genuine issue of material fact. *Anderson*, 477 U.S. at 249–50.

## ANALYSIS

Officer Defendants argue that summary judgment is appropriate because they are entitled to qualified immunity as to Plaintiffs' federal claim against them and their use of deadly

force was reasonable.  (ECF No. 42 at 5, 10.)  Before addressing these legal arguments, the Court considers whether there exists a genuine dispute of material fact.

## I.    No Genuine Dispute of Material Fact

Under Federal Rule of Civil Procedure 56(c), a party seeking summary judgment bears the burden to "cit[e] to particular parts of materials in the record" to support its arguments that no material fact is subject to genuine dispute.  FED. R. CIV. P. 56(c)(A), (B).  Once a moving party has met this burden, the nonmoving party must identify the material fact or facts in dispute by citing to particular facts in the record.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial."  *Interprofession du Gruyere v. U.S. Dairy Exp. Council*, 61 F.4th 407, 415 (4th Cir. 2023) (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)).

Plaintiffs' dispute as to the facts of this case is unclear.  Although they generally disagree with Officer Defendants' version of the facts, they support their disagreement by citing several paragraphs of their Amended Complaint that relate to Defendant Baltimore County's training and policies.  *See* (ECF No. 46 at 3–4.)  These citations to the record pertain to Plaintiffs' *Monell* claim (Count III), which is not alleged against Officer Defendants, and detail actions or inactions by Defendant Baltimore County.  *See* (ECF No. 21 at 31.)  Therefore, those citations in the record are not material to the claims against Officer Defendants.  As material to Officer Defendants' Motion, Plaintiffs dispute only (1) Officer Defendants' de-escalation efforts, (2) the immediacy with which Officer Defendants drew their weapons, and (3) whether Taylor

posed an immediate threat at the time of the shooting.  Specifically, Plaintiffs contend that Officer Defendants undertook no efforts to communicate with Taylor or de-escalate the situation, and Officer Defendants drew their weapons immediately upon arrival.  (ECF No. 46-1 at 2–3.)  However, they cite only to their Amended Complaint and offer no references to specific facts in the record that support their allegations.  Because Plaintiffs rest on their pleadings and offer no facts to support their contentions of factual disputes, they do not set forth specific facts showing that there is a genuine issue for trial.[7]  Thus, the Court concludes that there is no genuine dispute of material fact.

## II.     Counts I and II

Officer Defendants contend that they are entitled to summary judgment as to the claims of unreasonable use of force in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments (Count I) and unreasonable use of force in violation of Articles 24 and 26 of the Maryland Declaration of Rights (Count II) for two reasons.  First, Officer

---

[7]  Moreover, the Court notes that the body-worn camera footage blatantly contradicts Plaintiffs' assertions that Officer Defendants took no effort to communicate with Taylor or de-escalate the situation and immediately drew their service weapons.  Although the Court must draw all reasonable inferences to favor the nonmoving party, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "Thus, at the summary judgment stage, video evidence can only discredit a nonmovant's factual assertions if the video 'blatantly' contradicts the nonmovant's position."  *Simmons v. Whitaker*, 106 F.4th 379, 385 (4th Cir. 2024) (quoting *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008)).  Officer Defendants' body-worn camera footage shows that Officer Brocato only drew his service weapon after he asked Taylor, "What's going on? What's going on today? Come on, man, talk to me," and received no response.  Similarly, the body-worn camera footage shows that, before Officer Brocato fired his weapon, he spoke to Taylor for approximately two minutes, asked him to drop the knife at least eighteen times, asked him to stop walking once, and asked him to explain what was going on three times.  Officer Wise's body-worn camera footage shows that he arrived later than Officer Brocato, at a time when other officers already had their weapons drawn, and he asked Taylor to drop the knife twice before firing his weapon.  The video footage thus shows that Officer Defendants attempted to de-escalate and communicate with Taylor for approximately two minutes and only fired their weapons after Taylor failed to acknowledge their instructions and approached civilian vehicles.  Because this footage blatantly contradicts Plaintiffs' assertions and Plaintiffs identify no specific facts in the record that would create a genuine dispute, the Court accepts the facts as shown in the body-worn camera footage.

Defendants contend that they should receive summary judgment as to both Counts because shooting Taylor was not an unreasonable use of force. (ECF No. 42-1 at 9.)  Second, they contend that they are entitled to qualified immunity as to the federal excessive force claim in Count I because their use of reasonable force did not violate a clearly established right.[8]  (ECF No. 42-1 at 10–11.)  Plaintiffs do not directly respond to these arguments and instead assert that their *Monell* claim against Baltimore County forms the core of their Amended Complaint. (ECF No. 46 at 3.)  As an initial matter, "[t]he standards for analyzing claims under [Maryland Declaration of Rights Articles 24 and 26] are the same as for analyzing Fourth Amendment claims."  *Henry v. Purnell*, 652 F.3d 524, 536 (4th Cir. 2011).  Thus, the Court analyzes the excessive force alleged in Counts I and II together.  As explained below, the Officer Defendants' use of deadly force was reasonable such that they are entitled to summary judgment as to Counts I and II.[9]

---

[8]  Although Plaintiffs did not respond to Officer Defendants' qualified immunity argument, that "does not relieve a district court of its duty to consider if the moving party is entitled to judgment as a matter of law." *Palmer v. W. Va. Div. of Corrs. & Rehab.*, 2024 WL 4449419, at *1 (4th Cir. Oct. 9, 2024) (citing *Custer v. Pan Am. Life Ins.*, 12 F.3d 410, 416 (4th Cir. 1993)).  An officer's entitlement to qualified immunity on an uncontested record is a question of law that this Court considers regardless of Plaintiffs' failure to respond. *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005).

[9]  The reasonableness of Officer Defendants' use of deadly force fulfills the first prong of the qualified immunity analysis such that Officer Defendants are also entitled summary judgment as to Count I based on qualified immunity.  The Court notes that Plaintiffs also cannot overcome the "clearly established" prong of the qualified immunity analysis.  To determine if an official is shielded by qualified immunity, courts must determine that (1) "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show [that] the officer's conduct violated a constitutional right," *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001), and (2) the right was "clearly established" such that "every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 136 S. Ct. 305 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088 (2012)).  Under the "clearly established" prong, the Supreme Court has explained that "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074 (2011).  In this case, the use of force at issue is Officer Defendants' shooting of Taylor after he continued to hold a box cutter that he had previously used to stab civilians, did not acknowledge officers' commands, and moved toward occupied civilian vehicles while carrying the box cutter.  Existing precedent does not place beyond debate whether this constituted unreasonable force. *See, e.g., Kisela v. Hughes*, 584 U.S. 100, 105–106 (2018) (holding that case where officer shot woman who behaved erratically such that bystanders called 911, hacked tree with knife, moved within feet of officers, and failed to

"A claim that a law-enforcement officer used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard." *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014). "An officer may not use deadly force against a person who 'poses no immediate threat to the officer and no threat to others.'" *Wilson v. Prince George's Cnty., Md.*, 893 F.3d 213, 220 (4th Cir. 2018) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S. Ct. 1694 (1985)). Rather, a police officer's use of deadly force is reasonable if he "has probable cause to believe that a suspect poses a threat of *serious physical harm*, either to [himself] or to others." *Hensley on behalf of North Carolina v. Price*, 876 F.3d 573, 582 (4th Cir. 2017) (emphasis and alteration in original) (quoting *Cooper v. Sheehan*, 735 F.3d 153, 159 (4th Cir. 2013)).

This inquiry requires courts to consider, "from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight," "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 396, 397, 109 S. Ct. 1865 (1989). Specifically, courts evaluate three factors elucidated in *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865 (1989): "'[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officer or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Wilson*, 893 F.3d at 220 (quoting *Graham*, 490 U.S. at 396, 109 S. Ct. 1865).

The objective reasonableness of officers' use of force, "if the historical facts are sufficiently settled, is a question of law." *Rambert v. City of Greenville*, 107 F.4th 388, 398 (4th

___

acknowledge two commands to drop knife was "far from an obvious case in which any competent officer would have known that shooting [the woman] to protect [a civilian] would violate the Fourth Amendment").

Cir. 2024); *see also Armstrong v. Hutcheson*, 80 F.4th 508, 515 (4th Cir. 2023). Where the material facts are undisputed, therefore, a court must evaluate the legal question of whether officers' use of force was objectively unreasonable in violation of the Fourth Amendment. *Armstrong*, 80 F.4th at 514–15. In this case, as explained above, there is no genuine dispute of material fact. Officer Defendants have provided affidavits, investigative reports, and body-worn camera footage to support their version of the facts. Plaintiffs have not identified any specific evidence in the record and assert only vague factual disputes based on allegations in their pleadings. Therefore, Plaintiffs have not met their burden to establish a factual dispute, and the objective reasonableness of the Officer Defendants' use of force is a legal question left to the Court. *Rambert*, 107 F. 4th at 398; *Armstrong*, 80 F.4th at 513–14; *see also Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) ("Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence."). Under the *Graham* analysis, when viewed in the light most favorable to Plaintiffs, the facts of this case demonstrate that the Officer Defendants did not use unreasonable force in violation of the Fourth Amendment.

The first *Graham* factor, the severity of the crime at issue, weights in favor of the Officer Defendants. It is undisputed that Officer Defendants knew from the reports of several 911 callers that Taylor had stabbed multiple people at the Hunt Valley Town Center, fought an employee at a liquor store, and stabbed an individual at a restaurant before officers responded to Shawan Road that day. In Maryland, stabbing may constitute assault in the first degree, a felony punishable by up to twenty-five years' incarceration. *See* MD. CODE ANN., CRIM. LAW

§ 3-202. Thus, although the injuries Taylor caused are not contained in the record, Officer Defendants knew when they arrived to Shawan Road that Taylor had assaulted bystanders at multiple locations. Therefore, the first *Graham* factor favors finding the use of force reasonable because the Officer Defendants knew that Taylor had committed crimes that posed a threat to the public immediately before they responded to the scene. *See Graham*, 490 U.S. at 396, 109 S. Ct. 1865; *see also Wilson*, 893 F.3d at 220 (holding undisputed fact that plaintiff had committed assault on civilian victim and responding officer knew of assault weighed in favor of reasonableness of officer's decision to shoot plaintiff).

Moreover, under the second *Graham* factor, Taylor posed an immediate threat to the safety of others such that Officer Defendants' use of deadly force was reasonable. When viewed in the light most favorable to Plaintiffs, several undisputed facts demonstrate that the Officer Defendants' conduct was reasonable. Specifically, Taylor was holding a box cutter in his right hand; did not threaten officers or respond to their demands that he drop the box cutter; had used the box cutter to stab bystanders at multiple locations before Officer Defendants' arrival at Shawan Road; walked backwards away from police officers; walked towards at least four civilian vehicles; raised his arms in the direction of officers several times during the two minutes preceding the shooting; and removed a black bandana from his waistband, held it in his left hand, and pointed it at officers several times. The body-worn camera footage, which Plaintiffs do not dispute, also reveals that at the time Officer Brocato fired the first shot, Taylor stood a few feet away, facing him while walking backwards towards civilian vehicles a few feet behind him.

Under these facts, a reasonable officer could have believed that Taylor posed an immediate threat to the civilians in the vehicles.[10]  Although Taylor was not actively resisting arrest, his failure to comply with officers' repeated commands that he "drop the knife" favored the use of some force.  *See Est. of Armstrong ex rel Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 901 (4th Cir. 2016) ("Noncompliance with lawful orders justifies some use of force, but the level of justified force varies based on the risks posed by the resistance.").  A reasonable officer would have believed that Taylor was willing to harm civilians with the box cutter because he had already used it to stab several people at multiple locations.  Although Officer Defendants do not assert that there were any civilians on the street outside of their cars, Taylor's use of the box cutter to stab multiple civilians earlier that day would certainly lead a reasonable officer to believe that Taylor would attack civilians inside their vehicles to steal a car and flee.  Moreover, a reasonable officer may have believed that Taylor intended to flee police officers because (1) 911 callers had already reported Taylor at several locations throughout Hunt Valley; (2) Taylor ignored Officer Brocato's command to "stop walking" and walked away from police officers on Shawan Road; and (3) Taylor consistently moved toward the civilian

---

[10]  The Court notes that Officer Defendants concede that Taylor did not pose an immediate threat to officers at the time the shooting occurred.  *See* (ECF No. 47 at 3) ("The video speaks for itself as to where [Taylor] was walking and Defendants make clear that it was his proximity and threat to bystanders, not the police, which justified Defendants' use of force.").  The undisputed facts indicate that Taylor was holding a box cutter that he had previously used against civilians, ignored officers' repeated commands to "drop the knife," had raised his arms in the direction of officers, had pulled a black bandana from his back pocket and pointed it at officers, was within feet of officers when the shooting occurred, had not threatened officers verbally, and was backing away from officers.  On these facts, it is certainly possible that Taylor *could have eventually* posed an immediate threat to officers.  *See Bygum v. City of Montgomery*, 2023 WL 2203591, at *4 (4th Cir. Feb. 24, 2023) (quoting *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) ("To be sure, the justification for deadly force can arise in seconds, just as it also 'can fall away in seconds.'").  Viewed in the light most favorable to Plaintiffs, however, the facts show that at the time of the shooting Taylor was facing officers and backing away from them—as he had been for at least two minutes before the shooting—such that there is no indication that he meant to harm the officers.  Accordingly, the officers' use of deadly force could not have been justified by the danger to the officers visible in the body-worn camera footage.

16

vehicles stopped at the intersection of Shawan Road and McCormick Road. Officer Defendants thus reasonably believed that Taylor posed a threat to the civilians inside their vehicles while he remained armed with the box cutter.

As the U.S. Court of Appeals for the Fourth Circuit has noted, the justification for deadly force is heavily fact dependent and "can arise in seconds, just as it also 'can fall away in seconds.'" *Bygum v. City of Montgomery*, 2023 WL 2203591, at *4 (4th Cir. Feb. 24, 2023) (quoting *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022)). At the time Officer Brocato fired the first shot in this case, Taylor was more than a car-length away from the closest civilian vehicle, but he was continuing to move backwards toward those vehicles.[11] (ECF No. 42 Ex. D, at 2:20.) Even viewed in the light most favorable to Taylor, the facts indicate that he continued approaching civilian vehicles while armed with a weapon that he had earlier used to stab multiple people. A reasonable officer in Officer Defendants' position "in the heat of the moment" thus could have believed that Taylor posed an immediate threat to the people inside the vehicles he was approaching. *See Stanton*, 25 F.4th at 233 ("In questioning the split-second decisions of police officers, we must avoid hindsight bias and try to place ourselves in the heat of the moment."). Moreover, a reasonable officer in Officer Defendants' position would have believed that if Taylor continued to approach the civilian vehicles and suddenly attempted to attack someone inside a car, the officer would be unable to shoot without endangering the

---

[11] Officers shot Taylor multiple times. As the Supreme Court has explained, "if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat had ended." *Plumhoff v. Rickard*, 572 U.S. 765, 777, 134 S. Ct. 2012 (2014). In this case, Officer Defendants initially fired several shots and appeared to hit Taylor before pausing and instructing him to "get on the ground." When Taylor did not comply, Officer Defendants fired further shots and stopped shooting when Taylor fell to the ground. Consistent with *Plumhoff*, Officer Defendants were justified in firing further until the threat that Taylor posed to public safety had been neutralized. *Id.* at 777, 134 S. Ct. 2012.

civilian further.  Thus, a reasonable officer in Officer Brocato's position at the time he fired the first shot would have felt that he had to use deadly force to prevent Taylor's approach to the civilian vehicles.[12]

Taylor's previous use of the box cutter to stab multiple people distinguishes this case from cases in which the Fourth Circuit held that officers unreasonably used deadly force against individuals armed with knives.  The Fourth Circuit has explained that "the mere possession of a [deadly weapon] by a suspect is not enough to permit the use of deadly force … Instead, deadly force may only be used by a police officer when, based on a reasonable assessment, the officer or another person is *threatened* with the weapon."  *Connor v. Thompson*, 647 F. App'x 231, 237 (4th Cir. 2016) (emphasis and alterations in original) (quoting *Cooper v. Sheehan*, 735 F.3d 153, 159 (4th Cir. 2013)).  Thus, in *Connor v. Thompson*, 647 F. App'x 231 (4th Cir. 2013), the Fourth Circuit held the use of deadly force unreasonable where an individual armed with a knife "never raised his knife, changed hands, or acted aggressively with it" and "ma[de] no sudden moves" such that no reasonable officer would have believed the individual posed a threat to him.  *Id.* at 237.  Similarly, the Fourth Circuit in *Wilson v. Prince George's County, Maryland*, 893 F.3d 213 (4th Cir. 2018), found a genuine dispute of fact as to the issue of immediate danger where officers used deadly force against an individual who had previously assaulted a civilian, did not respond to police commands to drop his knife, stabbed and cut

---

[12] To the extent that Taylor posed a threat to civilians, he could only have harmed them after somehow gaining access to their vehicles.  Even so, the Court is mindful that "we must avoid hindsight bias and try to place ourselves in the heat of the moment," and it is undisputed that Taylor had used the box cutter in his hand to harm multiple civilians already and was within a few feet of the civilian vehicles stopped at the light.  *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (citing *Elliott v. Leavitt*, 99 F.3d 640, 642–43 (4th Cir. 1996)).  A reasonable police officer would have been cognizant that if Taylor got close enough to attack one of the vehicles, officers would be unable to shoot without endangering the people inside the vehicles.

himself, and lurched toward police from a distance of eight to twenty feet away.  *Id.* at 219–20.  Unlike the armed individuals in those cases, Taylor had used the box cutter in his hand to stab multiple people at two different locations before police responded to Shawan Road on September 28, 2019.  Officers therefore had probable cause to believe that he posed a threat to the public and would use the box cutter to harm the public.

Although the first two *Graham* factors weigh in favor of the Officer Defendants' reasonable use of force, the third *Graham* factor slightly favors finding the use of force unreasonable.  Under the third factor, courts evaluate whether the suspect was actively resisting or attempting to evade arrest by flight.  *Graham*, 490 U.S. at 396, 109 S. Ct. 1865.  Although neither Plaintiffs nor Officer Defendants address this factor in their briefing, there is little evidence in the record to suggest that Taylor was actively resisting or attempting to evade arrest by flight.[13]  Taylor ignored officers' repeated commands to "Drop the knife," and ignored one command to "stop walking" prior to the shooting.  However, Taylor faced officers while walking slowly toward the intersection throughout the altercation.  Therefore, although Taylor ignored the officers' instructions to drop the box cutter and stop walking, there is no evidence that he was actively resisting or fleeing arrest when Officer Defendants shot him.  *See, e.g., Wilson*, 893 F.3d at 220 (holding third *Graham* factor favored plaintiff where officer pointed weapon at plaintiff and told him to drop knife but never attempted to arrest

---

[13]  Although Taylor did not appear to be actively fleeing arrest, he certainly was subject to seizure throughout his interaction with police officers.  Under the *Mendenhall* test, a seizure occurs where "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870 (1980).  In this case, multiple officers had their weapons drawn and pointed at Taylor throughout the period in which he was walking down Shawan Road toward the intersection with McCormick Road.  Additionally, as noted above, Officer Brocato at one point told Taylor to "stop walking."  Under these circumstances, a reasonable person would not have believed that he was free to leave.

plaintiff before shooting).  Even so, two of the three *Graham* factors—including second factor, which the Fourth Circuit has deemed "particularly important"—weigh in favor of finding the Officer Defendants' use of force reasonable.  *See Caraway v. City of Pineville*, 111 F.4th 369, 382 (4th Cir. 2024) (quoting *Franklin v. City of Charlotte*, 64 F.4th 519, 531 (4th Cir. 2023)).

Accordingly, even when viewed in the light most favorable to Plaintiffs, the facts in this case are such that an objectively reasonable officer in Officer Defendants' position would have believed that Taylor posed an immediate threat to others.  Taken together, two of the three *Graham* factors favor finding Officer Defendants' use of deadly force reasonable, and Officer Defendants are entitled to summary judgment as to Counts I and II.

### III.    Count IV

Officer Defendants assert public official immunity as to the wrongful death claim in Count IV because that claim is based on negligence, and they were acting within the scope of their discretionary duties as public officials.  (ECF No. 42-1 at 12–13.)  Plaintiffs do not respond to this argument in their Opposition to Officer Defendants' Motion.

In Maryland, "[c]ommon law public official immunity applies to 'public officials (as opposed to mere employees) who perform negligent acts during the course of their discretionary (as opposed to ministerial) duties."  *Cooper v. Rodriguez*, 118 A.3d 829, 848 (Md. 2015) (quoting *Houghton v. Forrest*, 989 A.2d 223, 227 (Md. 2010)).  Public officials acting in their official capacity according to their "judgment in the absence of a hard and fast rule" act in the course of their discretionary duties.  *Id.* at 849.  "[D]iscretionary acts are those requiring personal deliberation, decision and judgment, while ministerial acts are those amounting only to an obedience to orders, or the performance of a duty in which the officer is left no choice

of his own." *D'Aoust v. Diamond*, 36 A.3d 941, 964 (Md. 2012) (internal quotations omitted). "[A] police officer, while acting in the scope of his employment as a police officer, is a 'public official' for purposes of the public official immunity doctrine." *Lovelace v. Anderson*, 785 A.2d 726, 734 (Md. 2001). Gross negligence is an exception to common law public official immunity. *Cooper*, 118 A.3d at 860. Gross negligence exists where an officer acts with "a wanton and reckless disregard for others." *Boyer v. State*, 594 A.2d 121, 132 (Md. 1991).

In this case, as noted above, there are no disputes of material fact, and Officer Defendants are entitled to public official immunity as a matter of law. "Unquestionably, the actions of police officers within the scope of their law enforcement function are quintessential discretionary acts." *Williams v. Prince George's Cnty.*, 685 A.2d 884, 896 (Md. App. 1996) (citing *Robinson v. Bd. of Cnty. Comm'rs*, 278 A.2d 71, 74 (Md. 1971)). Officer Defendants were acting within the scope of their official job duties as BCPD officers when they responded to dispatch's reports that Taylor was armed with a knife and had stabbed individuals in the area. The decision to shoot Taylor was a discretionary act based on their personal deliberation, decisions, and judgment. Plaintiffs do not allege that Officer Defendants acted with gross negligence, and there is no evidence that Officer Defendants acted with a wanton and reckless disregard for others. Officer Defendants engaged with Taylor—who was armed with a box cutter, known to have stabbed a civilian, and ignoring officers' repeated instructions to "drop the knife"—for two minutes before shooting him when he came within a few feet of civilian vehicles. Officer Brocato's concern for civilians' safety was apparent in the body-worn camera footage in which he noted that there were "people everywhere." Similarly, Officer Wise's perception of the urgency of the situation was apparent in his body-worn camera footage in

which he expressed the need move quickly.   Accordingly, Officer Defendants enjoy public

official immunity as to the shooting and are entitled to summary judgment as to Count IV.

## IV.    Count V

Based on the above conclusions that Officer Defendants are entitled to summary

judgment as to Counts I, II, and IV, they are also entitled to summary judgment as to the

survival action in Count V.  Under Maryland law, a survival action is not an independent cause

of action and instead is derivative of other claims in a plaintiff's complaint.  *See Est. of Green v.*

*City of Annapolis*, 696 F. Supp. 3d 130, 175–76 (D. Md. 2023) (collecting cases).  As explained

above, Officer Defendants' use of force was reasonable such that they are entitled to summary

judgment as to Counts I and II.  Moreover, Officer Defendants are entitled to public official

immunity as to Count IV, and that claim also would fail because their use of force was

reasonable.  "To raise a wrongful death claim in Maryland, a plaintiff must allege: (1) the

victim's death; (2) that the victim's death was proximately caused by the negligence [or other

'wrongful act'] of the defendant; (3) that the victim's death resulted in injury to the plaintiff,

who falls within the category of beneficiaries defined by the statute; and (4) that the claim is

brought within the applicable statutory period."  *Id.* at 175 (alterations in original) (quoting

*Willey v. Bd. Of Educ.*, 557 F. Supp. 3d 645, 670 (D. Md. 2021)).  In a wrongful death action

based on police officers' use of excessive force, therefore, the wrongful death claim must fail

if the officers' use of force is deemed reasonable.  *Cole v. Prince George's Cnty., Md.*, 798 F. Supp.

2d 739, 745 (D. Md. 2011); *see also Sigman v. Town of Chapel Hill*, 161 F.3d 782, 788–89 (4th Cir.

1998) (holding wrongful death action failed because officers' actions were reasonable as a

matter of law).  Because Count V raises a survival action derivative of the other claims in the

Amended Complaint, it must fail where Officer Defendants are entitled to summary judgment as to the claims against them. Accordingly, Officer Defendants are entitled to summary judgment as to Count V.

## V.     Count III

Finally, Count III, which alleges a *Monell* claim against Defendant Baltimore County, must be dismissed based on the grant of summary judgment to Officer Defendants. "Under *Monell*, a municipality's liability 'arises only where the constitutionally offensive actions of employees are taken in furtherance of some municipal 'policy or custom.'" *Walker v. Prince George's Cnty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009) (quoting *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984)). Thus, to state a claim against a municipality under *Monell*, a plaintiff must show that municipal employees violated constitutional rights. *See Monell*, 436 U.S. at 694; *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987). In this case, as explained above, Plaintiffs cannot show that Officer Defendants acted unconstitutionally because they cannot show that the use of deadly force was unreasonable. That is, Plaintiffs in this case cannot say that Baltimore County's supervision or training was inadequate because they cannot show that Officer Defendants' use of force was excessive. Therefore, Plaintiffs cannot state a pattern or practice claim under *Monell*, and Count III must be dismissed.

Moreover, dismissal of Count III must be with prejudice because any amendment would be futile. FED. R. CIV. P. 15(a); *see also Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962) ("We have interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment … would have been futile.'"). "Futility is apparent if the proposed amended

complaint fails to state a claim under the applicable rules and accompanying standards[.]"
*Katyle v. Penn. Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).  In this case, as explained
above, Plaintiffs will be unable to meet the elements of a *Monell* claim because the Officer
Defendants' conduct was reasonable and constitutional.  Therefore, any proposed amendment
would fail to state a *Monell* claim under the applicable rules and accompanying standards.  For
this reason, Count III must be dismissed with prejudice.[14]

---

[14]  As discussed above, this Court previously dismissed without prejudice the wrongful death claim in Count
IV and the survival action in Count V as alleged against Baltimore County.  *See* (ECF No. 27.)  Based on this
Court's ruling as to the reasonableness of the Officer Defendants' use of force, however, any amendment to
Counts IV and V as to Baltimore County would be futile.  That is, because Officer Defendants' use of force in
this case was reasonable, Plaintiffs would be unable to allege the elements of wrongful death or allege a survival
action against Baltimore County.  As explained above, wrongful death in Maryland requires the plaintiff  to
allege: "(1) the victim's death; (2) that the victim's death was proximately caused by the negligence [or other
'wrongful act'] of the defendant; (3) that the victim's death resulted in injury to the plaintiff, who falls within
the category of beneficiaries defined by the statute; and (4) that the claim is brought within the applicable
statutory period."  *Est. of Green v. City of Annapolis*, 696 F. Supp. 3d 130, 175 (D. Md. 2023) (alterations in
original) (quoting *Willey v. Bd. Of Educ.*, 557 F. Supp. 3d 645, 670 (D. Md. 2021)).  In this case, because Officer
Defendants acted reasonably, Plaintiffs cannot show that Baltimore County or its officers committed any
"wrongful" or negligent act in the manner required to allege the second element of wrongful death in Maryland.
Thus, any amendment as to Count IV would be futile.  Similarly, any amendment as to the survival action in
Count V also would be futile.  A survival action is not an independent cause of action in Maryland.  *See id.* at
175–76 (collecting cases).  In this case, because the Court has concluded that Officer Defendants acted
reasonably such that they are entitled to summary judgment and Plaintiffs cannot show they committed a
wrongful act giving rise to *Monell* liability by Baltimore County, there remain no underlying causes of action that
could support a survival action against Baltimore County.  For these reasons, the Court concludes that any
amendment to the Amended Complaint in this case would be futile.

## CONCLUSION

For the foregoing reasons, Officer Defendants Brocato and Wise are entitled to summary judgment as to the claims against them in Counts I, II, IV, and V. Additionally, because the *Monell* claim in Count III requires an underlying tortious act by Baltimore County police officers in this case, Count III must be dismissed. Finally, because all claims against all Defendants have been resolved, this case shall be closed.

A separate order follows.

/s/
_____
Richard D. Bennett

Dated: February 3d, 2025                United States Senior District Judge